UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TERRY TAYLOR,

                              Plaintiff,

    -against-                                              5:15-cv-0015 (LEK/ATB)

REEB MILL WORKS CORPORATION,
*et al.*,

                              Defendants.

## DECISION and ORDER

**I.    INTRODUCTION**

*Pro se* Plaintiff Terry Taylor ("Plaintiff") commenced the present action against Defendants Reeb Mill Works Corporation ("Reeb Mill Works"), Tim Basile ("Basile"), and Mike Joyner ("Joyner") (collectively, "Defendants") pursuant to Title VII, 42 U.S.C. § 2000e et seq., for alleged discrimination on the basis of race. Dkt. No. 1 ("Complaint"). Presently before the Court are Defendants Reeb Mill Works and Basile's Motion to dismiss, dated February 17, 2015, Dkt. Nos. 11 ("Reeb Mill Motion"); 11-1 ("Reeb Mill Memorandum"), and Defendant Joyner's Motion to dismiss, dated March 24, 2015, Dkt. Nos. 24 ("Joyner Motion"); 24-1 ("Joyner Memorandum"). For the following reasons, the Motions to dismiss are granted, and Plaintiff's Complaint is dismissed without prejudice.

**II.    BACKGROUND**[1]

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). Furthermore, as Plaintiff is proceeding *pro se*, the Complaint "must be

Construed liberally, Plaintiff alleges that while employed at Reeb Mill Works, Defendants discriminated against him by reducing his wages, by harassing him, and by terminating him. Compl. A few months after Joyner, a supervisor, was hired by Reeb Mill Works, where Plaintiff was employed, "accusations" arose.[2] Id. at 5. Plaintiff notes that these accusations took place over the course of over a year, at which point he called the EEOC in Buffalo. Id. Upon following up with the EEOC, Plaintiff was told that the first accusation was "cancelled by the second accusation." Id. Plaintiff was advised to record the issues that he was having at work, but did not do so. Id. After the work environment deteriorated further, Plaintiff called the EEOC a third time on September 8, 2008, after which he received a letter. Id. This letter is attached as part of the Complaint; it outlines the procedures for filing an EEOC complaint and is not a "right to sue" letter. See id. at 7.

On November 14, 2008, Plaintiff's knee gave out and he fell at work. Id. at 8. Basile, a supervisor, told Plaintiff that he would have to get a drug test. Id. Plaintiff recalls the company doctor recording the examination with Plaintiff's consent, but when he attempted to obtain a copy of the tape in 2010, he was unsuccessful. Id.

Plaintiff's paychecks were, on multiple occasions, less than the expected amount. Id. at 6. On multiple occasions in 2007 and 2008, Plaintiff talked to Joyner about these issues, but he made

---

construed liberally and interpreted to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

[2] There is no indication in the Complaint as to when any of these events occurred. However, working back through Plaintiff's timeline, noting that between 17 and 21 months elapse before Plaintiff made his first call to the EEOC, Joyner appears to have been hired in or around 2006. Compl. at 5.

no progress.  Id.  As a result, Plaintiff discussed the issue with a second supervisor, who called the main office in Bethlehem, Pennsylvania.  Id.  The main office sent copies of Plaintiff's paystubs to the facility where he worked on January 26, 2009, and he was fired three days later.  Id. at 6, 9.  Both Basile and Joyner met with Plaintiff and told him that there was a lack of work available, even though workers with less seniority were working full-time.  Id. at 9.  Basile then told Plaintiff that he was no longer allowed on the property without advance consent and an escort.  Id.  At this point, Joyner escorted Plaintiff to his van.  Id.

Defendants argue that Plaintiff has not exhausted his administrative remedies or obtained a right to sue letter from the EEOC and has failed to state a cause of action under Title VII.  Reeb Mill Mem. at 5-6; Joyner Mem. at 5-6.  They further claim that Plaintiff's Title VII claim against Basile should be dismissed as Title VII does not impose liability on individuals.  Reeb Mill Mem. at 7; Joyner Mem. at 7; see also Dkt. No. 23 ("Reply").

Plaintiff, in his Response to the Reeb Mill Motion dated March 11, 2015, states that the claims in his Complaint are a snapshot of his grievances and clarifies that the shortages in his paycheck occurred during the year 2008.  Dkt. No. 14 ("Plaintiff Response–Reeb Mill") at 2-3.  Plaintiff also notes that he has since discovered more shortages in his pay dating back to 2004.  Id. at 1-2.  Finally, Plaintiff states that he had no intention of naming either Basile or Joyner as defendants, and that his claims are directed solely at Reeb Mill Works.  Id. at 3-4.

Plaintiff, in his Response to the Joyner Motion dated April 21, 2015, explains in more detail the facts regarding Joyner's involvement, including allegations of an incident where Joyner drew attention to a workplace injury by being more concerned with Plaintiff's blood dripping onto the floor, Dkt. No. 26 ("Plaintiff Response–Joyner") at 3-4, a series of meetings called by Joyner where

3

various lies were told about Plaintiff, id. at 4-6, and a pattern of passing Plaintiff over when overtime shifts were available, id. at 6. Plaintiff alleges that upper management is ultimately responsible for Joyner's conduct. Id. at 7.

## III. DISCUSSION

### A. Title VII Claims Against Basile and Joyner

It is well established that in the Second Circuit, "individuals are not subject to liability under Title VII." Sassaman v. Gamache, 566 F.3d 307, 315 (2d Cir. 2009) (quoting Patterson v. Cty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)). While Plaintiff included Basile's name on the original Complaint, Compl. at 1-2, Plaintiff states that this was in error, Opp'n at 3-4. Furthermore, Plaintiff did not affirmatively name Joyner as a defendant when filing his Complaint; rather, Joyner was added later by the Court after a review of the Complaint. As a result, Plaintiff's Title VII claims against Basile and Joyner are dismissed.

### B. Title VII Claim Against Reeb Mill Works

A plaintiff must first obtain a right to sue letter before commencing an action pursuant to Title VII. McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006); see also Walters v. MedBest Med. Mgmt., Inc., No. 14-CV-0572, 2015 WL 860759, at *4 (N.D.N.Y. Feb. 27, 2015) (Kahn, J.). However, a failure to obtain a right to sue letter is not jurisdictional. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015). Instead, it is merely a statutory requirement "subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393.

In the instant case, Plaintiff has failed to attach a right-to-sue letter to his Complaint or any of his subsequent filings. In fact, in his response to the Joyner Motion, Plaintiff states that he did

4

not imply or mean that he had a letter. Pl.'s Resp.–Joyner at 2. It is worth noting, however, that Plaintiff did in fact attach a letter from the EEOC to his Complaint; however, it was not a right to sue letter, but rather a letter explaining the EEOC's administrative procedures and outlining the steps Plaintiff would have to take to receive a right to sue letter. Compl. at 7. Being mindful of Plaintiff's *pro se* status and the applicability of the doctrine of equitable tolling, Plaintiff's Title VII claim against Reeb Mill Works is dismissed without prejudice, subject to refiling with a right to sue letter or an explanation as to why Plaintiff does not have a right to sue letter. Janneh v. Regal Entm't Grp., No. 07-CV-79, 2007 WL 2292981, at *3 (N.D.N.Y. Aug. 6, 2007). Plaintiff is advised that if he wishes to explain why he does not have such a letter, he will need to plead facts, in detail, regarding his contacts with the EEOC after September 8, 2008. The Court declines to reach the merits of Plaintiff's claim without first establishing that he has received a right to sue letter or has a satisfactory explanation as to why no right to sue letter was provided to him. Ford v. City of Utica Parks Dep't, 100 F. Supp. 2d 148, 149 (N.D.N.Y. 2000).

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants Reeb Mill Works and Tim Basile's Motion (Dkt. No. 11) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Defendant Mike Joyner's Motion (Dkt. No. 24) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice**. If Plaintiff wishes to refile his Title VII claim against Defendant Reeb Mill Works, he must do so **within thirty (30) days** of the filing date of this Decision and Order. Plaintiff must either: (1)

attach a right to sue letter from the EEOC along with his amended complaint, or (2) provide a detailed explanation as to why he has failed to provide a right to sue letter; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 29, 2015
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge